NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| QUINCY CULPEPPER, | Case Number C 04-1050 JF |
| Petitioner, | ORDER[1] DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| SCOTT KERNAN, Warden, | |
| Respondent. | |

## I. BACKGROUND

Petitioner Culpepper ("Culpepper") and co-defendants Mark Upshaw, Anthony Wright, and Rolls Royce Miller each were charged with felony assault with a firearm (§ 245, subd. (a)(2)), with a sentence enhancement for personal use of a firearm (§ 12022.5). Culpepper also was charged with being a felon in possession of a firearm (§ 12021, subd.(a)). The charges against Culpepper were based on his participation in an assault, which his co-defendants had initiated and he had joined, during which Culpepper struck the victim with a gun belonging to one of his co-defendants.

---

[1] This disposition is not designated for publication and may not be cited.

1     The handwritten Declaration in Support of Arrest, dated February 28, 2001, charged

2 violations of "245(a)CDPC" and "12021PC."  The Amended Complaint, based on this

3 declaration, charged all three defendants with "a violation of Section 245(a)(2) of the Penal Code

4 of California" and "USE OF FIREARM CLAUSE (Penal Code Section 12022.5(a)) PER ALL

5 DEFENDANTS [complaint's emphasis]" as the First Count.  The Complaint's Fourth Count

6 charged Culpepper with violating Section 12021(a).  These charges were identified in the

7 "Clerk's Docket and Minutes" ("CDM") as "COUNTS 1)F245(A(2USE PC . . . 4)F12021(A) PC

8 1 PR."  CDMs dated 3/01/01, 3/02/01, 3/07/01, 3/29/01, 4/06/01, 4/20/01, and 6/21/01.

9     After initially pleading not guilty to all charges, Culpepper,  represented by attorney

10 Charles Jamison ("Jamison"), entered into a plea agreement with the District Attorney on June

11 21, 2001.  Prior to the court proceeding in which Culpepper formally entered his plea, the terms

12 of the plea bargain were memorialized in a "Waiver on Plea of Guilty/No Contest" ("Waiver on

13 Plea") form, which Culpepper signed, and which he also initialed as to each right waived.  On

14 this form, Culpepper asserted that he understood his "absolute" rights under the U.S.

15 Constitution, including the right to "a speedy and public trial by jury," and was waiving them "in

16 order to enter [his] guilty/no contest plea(s)."  Culpepper acknowledged, on this form, that he

17 understood he was charged with "P.C. 245(a)(2) / P.C. 12021(a)" and was pleading no contest to

18 ""P.C. 245(a)(2)."  Jamison countersigned this form in his capacity as Culpepper's attorney.

19     Later that day, a formal "Change of Plea" proceeding was held, at which Culpepper and

20 Jamison both were present.  At this proceeding, in the presence of both Culpepper and Jamison,

21 the trial judge specifically asked the prosecutor whether the 245(A)(2) no contest plea was "with

22 or without the use clause," to which the prosecutor responded that the offer was "245(a)(2) plus

23 the use clause with no promises."  Reporter's Transcript ("RT"), p. 1, lines. 9-15.  Culpepper's

24 attorney made no objection to this assertion by the prosecutor.

25     The trial judge then ordered Culpepper to set up an interview with an assigned probation

26 officer, to return to court for sentencing, and to "stay out of trouble, no new crimes."  The judge

27 promised that, "[i]f you live up to those three conditions, my promise holds no prison," and

28 warned that, "if you fail to live up to any one of those conditions, then all deals are off.  Then

2

1   you're stuck with your plea and technically then you could end up going to prison for up to 14

2   years." *Id*., lines 10-28.

3         The trial judge then asked Culpepper, "Do you understand that?" Culpepper responded,

4   "Yes." The judge again admonished Culpepper that should he violate any of the three

5   conditions, probation could be revoked. The trial judge enumerated the potential consequences

6   of such a revocation of probation, warning Culpepper that, "if you went to prison it could be two

7   years, three years or four years on the assault charge. Plus an additional three years, four years or

8   ten years for use of a firearm. So a maximum, an absolute maximum of 14 years." The judge

9   again asked Culpepper, " "Do you understand that?" and again Culpepper answered, "Yes." *Id*.

10  at 4, lines 1-13. Neither Jamison nor Culpepper objected to, questioned, or otherwise disputed

11  the trial judge's calculations as to the potential sentence that could be imposed, should Culpepper

12  violate the conditions of probation.

13        The trial judge then told Culpepper that, by entering a no contest plea, Culpepper would

14  be "giving up some important legal rights" including "a right to a speedy public jury trial." The

15  Court asked Culpepper whether he understood that right, to which Culpepper again answered,

16  "Yes." *Id*. at 5, lines 22-28. The Court enumerated the other rights Culpepper was waiving, as

17  listed on the Waiver on Plea form, including "to confront the witnesses against you" and "to

18  remain silent." Culpepper stated that he understood each of these rights, and waived all of them

19  of his own free will. *Id*. at 6, lines 1-21. The Court then asked Culpepper for his plea as to "a

20  violation of Section 245 subdivision (a) (2) of the Penal Code, Assault with a Firearm," and

21  Culpepper answered, "No contest." *Id*. at 7, lines 11-17. The Court then asked, "To the

22  allegation that in and during the commission of that offense and attempted commission you

23  personally used a firearm, do you also plead no contest?" Culpepper answered, "Yes." *Id*. at 7,

24  lines 18-21.

25        Subsequent CDMs, including on 9/24/01, 9/27/01, 9/28/01, 10/04/01, 11/16/01, 11/26/01,

26  12/03/01, enumerate the charges, "1)F245A2)USE PC CONVICTED-NOLO C" and

27  "4)F12021(A) PC 1 PR DISM-VIEW OF." The CDMs dated 09/04/01 and 10/25/01,

28  respectively, also documented that Culpepper was seeking to retain new counsel, and then that he

3

had retained attorney Walter Pyle ("Pyle") to represent him.[2]

On November 2, 2001, Culpepper, represented by Pyle, moved to withdraw his no contest plea to the Section 12022.5 violation on the grounds that "as to that charge (personal use of a firearm), he was not advised of, nor did he give up his constitutional right to a jury trial, . . . to confront and cross-examine witnesses, and . . . not to incriminate himself." Therefore, Culpepper asserted, his plea to the Section 12022.5 charge "was not understandingly and voluntarily made." Motion brief, p. 1.

Culpepper acknowledged that he had pled no contest to violating both Sections 245(a)(2) and 12022.5, and did not dispute that the former plea was voluntarily made, with knowledge of all of the constitutional rights he was waiving. He asserted, however, that the record lacked any advisements of "constitutional rights as to the section 12022.5 charge, or any waiver of those rights," but merely "reflect[ed] an admission of the charge." *Id.*, p. 2. Culpepper cited case law interpreting both the federal Constitution generally and California state law with specific reference to Section 12022.5, recognizing a defendant's rights to a jury trial, to confront and cross-examine witnesses, and against self-incrimination, on an enhancement violation. *Id.*

Culpepper noted that "[t]he penalty for Culpepper's underlying offense of Penal Code section 245(a)(2), as a felony, is two, three, or four years. Penal Code section 12022.5 is punishable by an additional and consecutive three, four, or ten years." *Id.*, p. 3. He then quoted selected portions of the trial transcript which, taken alone, could be construed in a way that would support his contention that, in fact, he was not advised of his rights as to Section 12022.5 and did not waive those rights. *Id.*, p. 5. Culpepper, however, omitted from his motion brief the trial court's explicit warnings that, should he violate the court's conditions, he could be imprisoned for two-to-four years "on the assault charge. Plus an additional three years, four

---

[2]Pyle represented Culpepper in his Motion to Withdraw Plea, and filed the Application for Certificate of Probable Cause to appeal the trial court's denial of that motion. Subsequently, Culpepper acted *pro se* and then was represented by Attorney Kyle Gee on appeal. After the California Supreme Court denied his petition for review, Culpepper filed the instant petition for writ of habeas corpus in this court *pro se*, and then again retained Pyle, who currently represents him.

4

1  years or ten years for use of a firearm.  So a maximum, an absolute maximum of 14 years."

2  On December 3, 2001, Culpepper's motion was denied, imposition of sentence was

3  suspended, and he was placed on probation with conditions including nine months in County

4  Jail.

5  On January 14, 2002, Culpepper filed a Notice of Appeal and Application for Certificate

6  of Probable Cause, which Certificate was issued on February 2, 2002.  He asserted that, under the

7  rule of *Boykin v. Alabama* 395 U.S. 238 (1969) and related cases, the trial court record failed to

8  show affirmatively advisement as to his federal constitutional rights for the Section 12022.5

9  offense, and that his plea therefore was invalid.

10  On March 28, 2003, the state appellate court affirmed the trial court's denial of

11  Culpepper's motion to withdraw his plea to the Section 12022.5 offense, finding that, "[i]n the

12  totality of the circumstances, Culpepper's plea to the enhancement was voluntary and

13  intelligent."  App. Dec., p. 6.   The court noted that the trial transcript documented that "the

14  prosecutor and court each described the count one as including both the assault charge *and* the

15  enhancement."  *Id.*  (court's emphasis).  The court detailed why each of the cases cited by

16  Culpepper were distinguishable from his case and therefore inapplicable.  *Id.*

17  In his petition for review filed with the California Supreme Court on April 29, 2003,

18  Culpepper asserted that, because the Waiver of Rights form that he had signed and initialed did

19  not include the Penal Code numerical identifier "12022.5," he did not waive his rights as to this

20  particular charge.  Petition for Review, p. 7-8.  Culpepper acknowledged, quoting from the

21  transcript, the trial court's admonition to him that "a subsequent violation of probation could

22  result in a State Prison commitment of 'two years, three years or four years on the assault charge.

23  Plus an additional three years, four years or ten years for use of a firearm.'" *Id.*, p. 8.  Culpepper

24  then directly quoted the trial transcript, in which he entered two separate pleas of no contest, first

25  that he "committed a felony, a violation of section 245 subdivision (a) (2) of the Penal code,

26  assault with a firearm," and then "to the allegation that in and during the commission of that

27  offense and attempted commission you personally used a firearm."  *Id.*, p. 9.

28  The gist of Culpepper's argument to the California Supreme Court was that the trial

5

court's use of the language "plus the use clause" and "with the use of a firearm clause," rather than the numerical identifier "Penal Code Section 12022.5," in specifying the enhancement charge, constituted a failure to advise him of his rights as to that charge, thereby invalidating his no contest plea to it.  In particular, Culpepper argued that after apprising him of all the rights he was waiving, the trial court asked him whether he "also" was pleading no contest to the charge of "having personally used a firearm in and during the commission of [the Section 245(a)(2) offense]," rather than asking whether he was "also" pleading no contest to "Penal Code Section 12022.5."  Based on this reasoning, Culpepper asserted that the trial court apprised him of his rights only as to the Section 245(a)(2), and not as to the Section 12022.5 offense.

Culpepper acknowledged that during the trial court proceeding he "was represented by Counsel and advised of the three rights as to the underlying charge."  *Id.*, p. 15.  The foundation of his claim is based on his assertion that "he was not advised of – and did not waive – his right to have a jury decide the firearm use allegation if it found him guilty of one or more counts . . . [and he] was not advised of his right to confront adverse witnesses on this allegation. " *Id.*

After the California Supreme Court issued a summary denial, Culpepper filed a timely, exhausted habeas corpus petition in this Court on March 16, 2004.  The instant petition alleges a single claim, that his plea of no contest as to the Section 12022.5 violation was not knowing and voluntary.  The matter having been fully briefed and all of the parties' arguments having been considered, the Court concludes that the petition is without merit and therefore should be denied.[3]

## II. STANDARD OF REVIEW

This Court will entertain a petition for writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State Court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The petition may not be granted with respect to any claim that was adjudicated on the merits in

---

[3] The matter was taken under submission without oral argument upon completion of the briefing pursuant to Civ. L. R. 7-1(b).

Case No. C 04-1050 JF
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
(JFLC2)

1   state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was

2   contrary to, or involved an unreasonable application of, clearly established Federal law, as

3   determined by the Supreme Court of the United States; or (2) resulted in a decision that was

4   based on an unreasonable determination of the facts in light of the evidence presented in the state

5   court proceeding."  28 U.S.C. § 2254(d).

6          A state court's decision is "contrary to" clearly established federal law if the state court

7   arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if

8   the state court reaches a decision different from that reached by the Supreme Court on a set of

9   materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  A state court's

10  decision involves an "unreasonable application" of clearly established federal law if the state

11  court identifies the correct governing legal principle but unreasonably applies that principle to the

12  facts of the petitioner's case.  *Id*.  "[A] federal habeas court may not issue the writ simply

13  because the court concludes in its independent judgment that the relevant state-court decision

14  applied clearly established federal law erroneously or incorrectly.  Rather, that application must

15  also be unreasonable."  *Id*. at 411.

16         A state court's decision is based upon "an unreasonable determination of the facts in light

17  of the evidence presented" when the state court fails to consider and weigh highly probative,

18  relevant evidence, central to the petitioner's claim, that was properly presented and made part of

19  the state-court record.  *Taylor v. Maddox*, 366 F.3d 992, 1005 (9th Cir. 2004)  This Court must

20  presume correct any determination of a factual issue made by a state court unless the petitioner

21  rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

22                                  **III. DISCUSSION**

23         Culpepper contends that although his no contest plea to the Section 245(a)(2) violation

24  was knowing and voluntary, his no contest plea to the Section 12022.5 violation was not made

25  knowingly and voluntarily, because the "[r]ecord does not "AFFIRMATIVELY SHOW" that he

26  waived his rights with respect to the latter offense, as required by *Boykin*.  Pet., p. 5 (Culpepper's

27  emphasis).  Culpepper specifically asserts that:  (1) the form he initialed and signed prior to

28  formally entering his plea did not specifically enumerate the Section 12022.5 enhancement; and

7

1    (2) "[the] Judge did not orally advise me of those rights, or ask if I gave them up." *Id*.

2         On federal habeas, this Court reviews the decision of the highest state court to provide a

3    reasoned decision on the merits. *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir.

4    2000).  Because the California Supreme Court summarily denied Culpepper's petition for review,

5    the Court "looks through" the summary denial to the appellate decision.  *Id*.  Consequently, the

6    relevant decision for purposes of Culpepper's appeal is the March 28, 2003 decision of the

7    California Court of Appeal denying Culpepper's direct appeal.

8         The state appellate court found two facts in the record particularly relevant.  First, it noted

9    that the trial court had specifically admonished Culpepper, "that he was settling '[his] case'

10   without a trial, which meant that he was 'giving up some important legal rights' that the court

11   proceeded to explain."  Second, it pointed out that both the prosecutor and the court orally

12   clarified that count one, to which Culpepper pled no contest, "included both the assault charge

13   *and* the enhancement."  App. Dec., p. 6 (emphasis added).

14        The state appellate court's analysis that, applying the rule of *Boykin* to these facts, "the

15   [trial] court's failure to again recite each of the *Boykin/Tahl* rights in accepting no contest pleas

16   to the offense and special allegation charged in count one" did not invalidate Culpepper's plea to

17   the enhancement, was not unreasonable.  In contrast to Culpepper's claim that "[the] Judge did

18   not orally advise me of those rights, or ask if I gave them up," the record shows that the trial

19   court *did* affirmatively advise him as to all of the rights he was waiving, and also explained the

20   effect of his waiver of rights with respect to the amount of time he could potentially serve for the

21   assault, for the "use" enhancement, and for the two combined.

22        The appellate court also quoted *People v. Howard,* 1 Cal.4th 1132, 1141 (1992), in noting

23   that, "under the federal Constitution . . . a plea is valid if the record affirmatively shows that it is

24   voluntary and intelligent under the totality of the circumstances." *Id*., pp. 5-6.  See also *Rose v.*

25   *Lundy*, 455 U.S. 509, 526-27 (1982).  Therefore, the appellate court soundly reasoned that, even

26   if error could be found in the trial court's failure to enumerate separately each and every right

27   Culpepper was waiving for the enhancement component of count one, after having fully

28   enumerated those rights as to the underlying charge, "[such error] would certainly be harmless."'

                                          8

1   *Id.*

2          Accordingly, Petitioner has failed to demonstrate that denial of his claim was contrary to,

3   or an unreasonable application of, clearly established federal law.

4                                        **IV. ORDER**

5          The petition for writ of habeas corpus is DENIED.

10   DATED:  4/3/06

13                                    _____
                                      JEREMY FOGEL
14                                    United States District Judge

Case No. C 04-1050 JF
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
(JFLC2)

1    Copies of Order have been served upon the following persons:

2

3    <u>Counsel for Petitioner</u>:
     Walter K. Pyle
4    2039 Shattuck Avenue, Suite 202
     Berkeley, CA 94704
5

6    <u>Counsel for Respondents</u>:
     Peggy S. Ruffra
7    Supervising Deputy Attorney General
     Office of the Attorney General of the State of California
8    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA 94102
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        10

Case No. C 04-1050 JF
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
(JFLC2)